Mr. Lowe. Good morning. May it please the court, counsel, Mr. Davis. Well, it's an honor to again come before this esteemed bench. We know that a very small percentage of cases that are filed in court make it to trial. And there's a reason for this, obviously. But there is a percentage of cases that have the requisite facts, have the law on their side, and cases in which the T's are crossed and the I's are dotted. And your honors, this is one of those cases. This case concerns a years-long pattern and practice at the Little Rock Police Department of executing explosive no-knock warrants at homes based on very dubious and oftentimes non-existent evidence. This is a dangerous practice involving flash bang grenades and storm trooper-dressed SWAT officers along with narcotics detectives who blow doors off hinges and then ransack the homes. This is a practice that ceased when this litigation began. Now, the facts of this particular case involving my client, Mr. Davis, are compelling. But truth be told, they have not too much to do with what we're doing here today. Excuse me, Mr. Lowe. I have a factual question. Yes, indeed, sir. So the flash bang necessarily involves an explosion that knocks the door down, is that correct? Well, there are two aspects of the explosive nature of these no-knock warrants that are served. One of them involves blowing the... That's what I thought. So the flash bang itself is not used to blow the door down. That's correct. The flash bang is used to disorient... So what do we have in this case? We have both of them. We have an explosive device blowing a door off the hinges and then another incendiary device set inside to infuse and disorient. Yes, sir. And these are compelling facts, and I will get into them briefly, but really this is an issue of federal court standards and whether the district court adhered to those standards. I have great respect for the court below, but his honor was absolutely wrong in the grant of summary judgment in this case because plaintiff presented scores of material evidence and facts which show that there was no good faith or reasonable basis for this search warrant execution, and certainly not to the level that it was executed with the detonating of explosives and whatnot. There was no history of violence. There was no indication that would warrant the use of such devices. So just as a very basic overview for the court, I'm going to touch on the brief background and procedural facts and then get into plaintiff's two arguments. The first is that the court erred in accepting the facts of the non-movement city of Little Rock Police Department and officers and embracing their facts wholesale. In fact, the majority of that opinion really just recites the defendant's facts. And the second argument is that the award of attorney's fees was an abuse of discretion because it involves basically a misdeposition and no lodestar analysis of any kind regarding those fees. So very quickly, Derek Davis, a college educated man, at the time engaged to a woman who's now his wife, lived at an apartment in Little Rock, Arkansas. In August and September of 2017, a couple of unusual things happened. A guy came to the door, knocked, engaged Mr. Davis, engaged in brief, very odd small talk, and then went on his way. About a week later in the morning, early morning hours on September the 6th of 2017, there was an explosive breach of Mr. Davis' home. The door flew off the hinges. Incendiary devices were thrown inside. Smoke, loud noises, ringing ears. Stormtroopers, might as well have been, rushed through the house, took Mr. Davis, grabbed him, zip-tied him, pointed weapons at him. My God, what did they find? What did they find? Well, when all was said and done, they found, admittedly, a small bag of personal consumption marijuana and a registered handgun. I think that those two items are probably apparent or present in a high percentage of homes in Arkansas and certainly in Little Rock. What did they not find? They did not find the reams and sacks of cocaine that their very unreliable informant told them would be there. No evidence of cocaine, no cocaine consumption, let alone dealing. So Mr. Davis was arrested and due to an administrative error, was nearly extradited to Texas where he knows no one. So, point number one, argument number one, esteemed bench, the district court erred by ignoring plaintiff's facts in this case and accepting nearly all of defendant's facts. Now, this isn't really kind of a qualified immunity matter here because I think it's pretty established. If plaintiff's rendition of the facts are correct, then there was no basis for this search warrant execution and certainly no basis for an explosive entry. If plaintiff is correct, if defendants are correct, well, then some re-judgment perhaps would have been legitimate on those points. But what plaintiff alleges and what plaintiff shows with supporting evidence is that affidavits were falsified in order to get the warrant in the first place. So, specifically, what was falsified in those affidavits? So, Detective Bell, in his affidavit, assured Judge Finkelstein that based on his years of experience doing no-knock warrants, that he would be doing this explosive breach himself, or at least intimates that. He told Judge Finkelstein that the informant that they used was reliable when, in fact, he had been terminated or it was discovered five years earlier that he made a threat against a prosecutor while in custody. Did the officer at that point, is there evidence whether he knew that the CI was unreliable or did he say based on his experience, he found the CI to be The affidavit that was executed by Detective Bell attests to the personal integrity attributes of that CI based on his prior experiences with that CI. And was there evidence that he had prior bad experience with the CI? Well, there was evidence that, yes, that we learned in discovery that because these narcotics officers all do these raids together and oftentimes swap these guys out, they were aware that he had Well, they or he? Well, we showed evidence. He did not admit to being aware of it, of course, but we brought forth evidence that the narcotics officers get together that this guy was notorious. He was one of the only guys used for many years. Certainly the inference based on our evidence is that these narcotics officers all knew this particular informant. So using a dirty informant, using SWAT without basis, there's no basis for the flashbang. These were the things in the affidavit that were not true and bring the defendants quite a significant crimes problem. And then I think another slap in the face to the plaintiff in this case is that then Bell goes on and submits an affidavit afterward where he says, hey, I didn't have anything to do with this execution. The first affidavit he says, don't worry, Judge, my experience, my this, that, and everything, I'll take care of it. But once the litigation is filed, now it's a hot potato that he says that he didn't have anything to do. It was instead the SWAT team. And that point, that aspect brings up a good point. This court in the case of ZJ versus Kansas City Board, I read that case multiple times over. And it seems that the district court relied heavily, heavily on that case in granting summary judgment. Basically saying, look, these guys weren't SWAT, ZJ says it's SWAT. And if it's not SWAT, then it can't be the narcotics. If it's SWAT, it can't be the narcotics. But I'm reminded of Shakespeare, Your Honors, who said, rose by any other name, not smell as sweet. The label that these officers get, it really is immaterial. I think what ZJ stands for, and the reason that the narcotics detectives in that case were allowed qualified immunity, is because on those facts, they didn't have anything to do with the breach. That's a singularly distinguishing factor here, where these officers were there, they were present, they filed an affidavit with a judge to get the warrant, saying that they would authorize, that they would oversee this. Well, counsel, the ZJ case is really decided based on no clearly established law, right? Well, I think... If you look at section 2B2, I think they call it, of the opinion. Yes. On page 688, it says, without deciding the closed question, where the detective's decision to use a SWAT team to execute violated the Fourth Amendment. So they're saying they're passing the violation prong, and they're going right to the clearly established prong, and they say it wasn't clearly established, that would put detectives on notice, that using a SWAT team to execute a search warrant under these circumstances, which as you note are similar here, would violate the Constitution. So even if you were right about the violation, does the point about no clearly established law still defeat the case? Well, I mean, I think in essence, then you're looking at a Graham issue. You're looking at a reasonable objectiveness, objective reasonableness issue, because the force simply can't be any greater than what's called for. The way that I read ZJ is that the SWAT team were not given qualified immunity because they had their fingerprints were on this operation, and the narcotics detectives were cleared because their fingers were not on it. And so I feel like what the district court did was it painted with too broad a brush and said, well, only SWAT officers can be responsible for the execution of warrants, and detectives cannot. But I think the circumstances of that case that you quote, Judge Benton, is that those narcotics officers or those detectives were unaware of a separate, at a different location, a separate breach after they already had the suspect in custody. That is definitely the right hand not talking to the left hand, and that's why the detectives got out in that case. Here, the hands are joined, and they're both at the door of Mr. Davis. That's another, I think, very important distinguishing factual characteristic. Was that just being at the door? Does that necessarily involve you? Well, if you look at Officer Bell's affidavit, he talks at great length about his experience in doing these, and it's more than just at the door. He says, I believe he, I'm sorry, excuse me, I'm sorry to interrupt, but I think he said he would be there to assist. Isn't that right, in the execution? Is that not the word? I think that the language is stronger than that, Judge Arnold, but you could be right. But certainly, nowhere in the four corners of that affidavit, anywhere, does he mention that there will be a SWAT team there. The judge signing off on that warrant would have no reason to believe that there would be SWAT engagement in that particular, in that execution of that warrant. I'm going to just take about 30 seconds. There's major Monell problems here, too. Counsel says that we don't appeal Monell. We absolutely appeal Monell. It's on page 26 and 27 of our brief. In that respect, we have a memo which reflects, the memo itself is not the policy, but the memo from the chief, from that department, references the de facto custom that we allege about the SWAT execution. And furthermore, we have an affidavit. I think that's like the gold standard in these types of cases. You have an affidavit from a police chief, a successor, who says, look, when I got there, here are the problems that were there, and they dovetail entirely with our complaint. I think that's strong, strong evidence of Monell. So barring any questions that this esteemed bench might have, I would then, I'm done with my opening. Yes, and you may reserve the remainder of your time. Thank you so much, sir. Okay. Mr. Adams. Good morning, your honors and counsel. And may it please the court, my name is John Adams. I represent Little Rock Police Officers Robert Bell, Mark Eisen, and Zachary Hardman, and the district court properly granted my client's motion for summary judgment in this case, and this court should affirm. There's a lot I want to say in rebuttal of what Mr. Lowe said, but I think it makes sense to start with this. Mr. Lowe filed this case, the first iteration of this case, in 2019, I believe. He then non-suited the case and brought it again. There was significant discovery produced in the first version of the case by the defendants, and significant discovery including requests for admission in this iteration of the case that established beyond peradventure that Detective Zachary Hardman had nothing to do with this case. Mr. Lowe took a line from an unrelated narcotics defendant in a separate case that we all work on these cases together, and attempts to bootstrap that into a claim that every narcotics defendant is responsible for what every other narcotics defendant did during these few years in Little Rock. Which... Please focus on Detective Bell, because that's all the argument was about. Okay. Well, I think it's important to bring up because the reason he can't let that go is because it's a premise of his argument that somehow all these folks work together and they all knew what all the other ones knew, as though somehow they were all at every event, which if you go to what he cites on that, it doesn't show that at all.  Well, Bell, as he sets out, in this case, he received a tip that there was drug activity going on at a certain apartment number and by a gentleman who drove a gold Jeep Liberty. Did he have actual knowledge of the CI's unreliability? He did not. He had personally worked with that CI and gotten successful convictions, which we also lay out in this case. And I think the record that Mr. Lowe puts in court shows that Detective Bell and the other narcotics defendants didn't know about the CI's issues until a year or two after this event in August and September of 2017. So, you know, what Detective Bell did is what should be at issue in this case. And there's a lot of smoke and mirror thrown up by my opposing counsel, just about precisely how this case happened. He talks a lot about non-movement facts, as though we're trying to say something that he didn't admit. He sneaks in at the end of his record, his response to our statement of undisputed material facts at the summary judgment phase. So it's not as though the district court was just wholesale adopting our version of events. There were a lot of things that he was not in a position to deny and did not. So those facts include that this confidential informant did show up at the appellant's house. So he has to fall back on the idea that the confidential informant deceived the narcotics officers and faked the drug transaction. He then has to fall back on trying to say that the search of the confidential informant was per se unreasonable because his underwear was not searched. And there was some metaphysical possibility you'll see in the depositions, him pressing the narcotics defendant on the idea that they could not be, as John McLaughlin would put it, metaphysically certain that the confidential informant hadn't misled them about what happened when he went to the door. The other way that Mr. Lowe plays fast and loose with the facts is by talking about the level of subsequent confirmation of drug dealing activity. It wasn't two bags of marijuana and a registered handgun. It was two containers of marijuana, scales, handgun, and ammunition all found in the same place. So again, that doesn't go to the ex ante reasonableness, but the idea that this case demonstrates that merely recreational drug users were raided is also wrong. What about the execution of the warrant? Who was involved in that and why is the appellant wrong here? Well, the appellant is wrong because the undisputed evidence shows here that the way the Little Rock Police Department did this case, as it did all of the drug warrant executions in this period, was for the narcotics officers to obtain the warrants, then brief the SWAT team on everything they knew that was relevant to actually executing the warrant and securing the scene, they would, they would attend, but stand back and let the SWAT team, um, actually enter, uh, the premises and then once it was secure, they would do the search to look for the drug evidence that they expected to find there. Um, so I would point you to the language that, um, judge Arnold pointed out. Affion states, he will personally assist in the execution of the search and seizure warrant. He did what he said he was going to do. He was, he was there to assist the SWAT team in the execution of the warrant. And then he was going to go look for the drugs, which is what he did and found. Um, the fact that he didn't detail in the, in the warrant that the SWAT team was going to be controlling the manner of entry, um, as the SWAT team did in the ZJ case, uh, doesn't make the warrant invalid under any precedent that he can cite. And I, just as a common sense matter, I don't think it makes this warrant application confusing. I mean, I don't think a reasonable district court judge would necessarily expect that that narcotics officer was going to be the one doing, doing the entry. Didn't really go to probable cause. No, your honor. That's right. I mean, I think the district court lays out all the other reasons why, um, this warrant application gave more than sufficient probable cause to enter the appellant's home. Um, I guess the only other thing I'd mentioned is that, you know, the other arguments that he makes about, you know, about the evidence about hearsay and about, um, about records really rely on cases that don't apply in the case, in the case of the records. This is nothing like, um, a tax records case where there's any kind of evidence that, uh, drug investigators are not going to be able to get a warrant for files always include a certain kind of information and there's a suspicious lack of that information here. There's nothing like that. Um, similarly, the hearsay argument is just flatly contradicted by the precedent of this court, um, in the United States versus King, this court lays out all of the examples of police officers testifying in court to why they started doing an investigation. Obviously, every time a police officer gets a tip, if they explain why they did what they did, they don't know that someone committed a crime at the beginning of the process. But in order to give a not confusing explanation of why they conducted all their further investigative steps, they have to start with that. So they're not offering the tip for the truth of the matter asserted. They're offering the tip to explain why they took the next step and the step after that. So unless your honors have any more questions, I'll sit down. Okay. Thank you for the argument. Ms.  Perez. Good morning. May it please the court, counsel. My name is Lynette Perez. I'm the chief deputy city attorney for the city of Little Rock appearing today on behalf of the city of Little Rock and our former chief Kenton Buckner. Um, it is our prayer that the summary of judgment that was granted to the city and chief Buckner be affirmed by this court for several reasons. Uh, first it is clear, both from the briefing, as well as argument that no constitutional violation has been established as relates to the city as, and it could, and also to chief Buckner. Um, even before we get to a Manel, uh, analysis, the case law is clear that before municipal liability can attach individual liability must be established on an underlying substantive claim. And so while there has been, you know, suggestion that a fourth amendment claim has been validated, it has not. It has not been sufficiently pled or argued that there was no probable cause as it relates to the policy of the city, which in every case, whether it be no knock or knock and announce is the policy of the Little Rock police department, that a neutral magistrate be afforded an opportunity to review affidavits to be able to say that, thank you, officers. Uh, this is not enough for me go get more. Or in the case of a ZJ, a neutral magistrate could also say, while you're, it is valid to, and I'm going to grant your ability to have the search warrant, but I am going to decline the, uh, no knock portion in this case, a neutral magistrate had an opportunity to hear from detective Bell, review his affidavit, hear his testimony of experience with this CI, um, both of, um, of which had been positive experiences. There is nothing in the brief or argument to suggest that detective Bell is my co-counsel has articulated, had any knowledge of any problems with this particular, uh, confidential informant, and even if, what's your, uh, opposing side point or two about what we found out later? Um, as what, even if, say for argument's sake, um, the, uh, detective Bell had knowledge. Our position is that even if you had admitted some of the things that the detective had said, you still have probable cause. You had a citizen of Little Rock who had contacted based on their own observation of this particular apartment 602 and test and in an email, say it stated, um, that they were concerned because of the volume of traffic at all hours going to this particular residence. Detective Bell, um, interviewed this, uh, citizen interviewed a second neighbor. They had a control by and, um, detective and another detective actually witnessed the confidential informant, go to the store and come back with, with evidence. And so it is our position that, you know, again, when you're going for a warrant, it is about probable cause. It's not trying to go, you know, to beyond a reasonable doubt standard. And even if some of this information was known and had been omitted, it's our position that it does not defeat the probable cause that the detective gave to that neutral magistrate. And when the magistrate granted the search warrant and the no-knock aspect of it, which the neutral magistrate could have denied, but did not based on that information, that it is reasonable per se that they'd be able to proceed at And so if there is no underlying substantive, uh, uh, abuse or, uh, or a miss of a constitutional right, an abuse of a constitutional right, that just as a matter of law, the city of Little Rock as well as the chief, and as it relates to the chief, the only thing that all parties seem to agree on is that the chief received an email from a citizen and then forwarded to the appropriate division within our police department. The chief was not involved in any way of this interaction with a confidential informant. The chief wasn't involved in interacting with SWAT and strategizing. The chief was not involved in the arrest or entering in. And so there is no nexus between chief Buckner and the execution of the warrant. And I should also point out that if there is objection about SWAT and their procedures, SWAT, no SWAT officer was named in this lawsuit. It is simply the detectives, the chief, and the city. And the last point I would like to, um, just again, just on the face of the pleadings itself, is that claims that, um, that counsel says are error committed by Judge Moody, um, that he did not address the liability issues, um, in the pleadings in this appellate briefing as it relates to the city of Little Rock or as it relates to chief Buckner. And this court has consistently said that if claims not raised in opening briefs are waived, Jenkins versus Winter. And so it is our prayer that again, based on the pleadings that no constitutional violation can be found, it cannot pass Monell scrutiny. And the lack of pleading in the brief waives certain issues. Thank you. Thank you for your argument counsel. Mr.  I've known Mr. Adams for a while, and I must say that I take exception to words like sneaks and fast and loose. But I forgive you, John, you know, we'll work again. Um, um, when asked if Bell knew about this, um, dirty informant, uh, Mr. Adams said, uh, no, no, he didn't know they had successful convictions with him. Yeah. That's the problem. The fact that they had successful convictions doesn't all negate the fact that these officers knew or had a reason to know that this, uh, informant was problematic of the first degree. It's not about, um, about every, uh, and it's a small group, by the way, of these, these narcotics detectives. We're talking about like five or six individuals. It's not some big group. So they said they're a close knit group. They say we all go in on everyone's warrant together. And indeed, what kind of a department would insulate that type of information about a dirty CI and not inform the rest of them? What kind of a functioning department would that be? The facts and the inferences show that these guys knew that this informant was dirty and that negates everything in that affidavit, that's the Frank's problem, uh, on the, on the front level. Um, if the CI is dirty and they have a reason to know that, that entire affidavit is a farce. And, um, and, and it's, it's, uh, whether, uh, the CI deceived the detectives or they played ball with the CI, that's a fact question. That's a credibility question. Um, uh, you know, it doesn't help their case when they have a process by which an office, uh, an informant doesn't have to empty his pockets entirely or shoes or socks, and then goes in and is not in plain sight and comes back with the goods. Mr. Lowe. Thank you for your argument. Your time is expired. Thank you. Thank you. Thank all counsel for their argument in this case. In case number 23 dash 1636 is submitted for decision by the court.